Weygandt, C. J.
By reason of the uncertain and confusing manner in which the matter was handled by the Court of Probate, the initial question here presented is a procedural one.
The first determination in that court on September 7, 1955, was in conformity with the views of the plaintiff to the effect that the succession was not taxable. Then two days later on September 9, the defendant Department of Taxation wrote the court a letter reading in part as follows:
“We have application and entry determining tax in this estate before us.
“In schedule D is noted U. S. bonds held joint and survivorship between husband and wife, total of $10,006.57, of which one-half, or $5,003.29, are taxed. This does not appear to be in accordance with Amended Probate Court Bulletin No. 8. In other words, there is no finding in the entry by the probate judge that the survivor-widow made any money contribution to the purchase of said bonds.
“Also in our file we have application for consent to transfer:
“ ‘Retirement annuity contracts Nos. * * * John Hancock Mutual Life Insurance Company. Beneficiary, Nellie C. Chadwick, wife. Death benefit, approx. $7,920.’
“These are not listed for taxation. We believe that they are taxable. See Probate Court Bulletin No. 6.
“Please advise us on both the above matters.”
As a result of the letter, the Court of Probate, a month later on October 11, changed its original determination of the tax by approving a second journal entry adopting the suggestions made by the defendant Department of Taxation.
However, the defendant then discovered another respect in which it thought the Court of Probate in error. Hence, on October 17, it wrote the court still another letter suggesting a further change in the determination of the tax. When the court did not adopt this new suggestion, the defendant on No *375 vember 7 filed a document captioned “Exceptions to Determination of Inheritance Tax.”
It is the contention of the plaintiff that the defendant had no right to file these exceptions to the determination since the letter of September 9, although not so labeled, was in fact an exception, and the defendant could not file a second exception.
To the contrary the defendant insists that the letter of September 9 was a mere letter; that it was not filed; that it was not denominated an exception; that it requested no hearing; and that it asked no judicial determination. .
This court is of the opinion that the lower courts were not in error in refusing to construe the letter of September 9 as a compliance with the requirement of Section 5731.38, Eevised Code, permitting a dissatisfied person to “file exceptions in writing with the Probate Court within 60 days.” Hence, the defendant’s formal exceptions of November 7 were properly so considered.
After the filing of the exceptions of November 7, the Court of Probate on March 14, 1956, again changed its determination of the tax by approving a third journal entry adopting the further views of the defendant. The plaintiff has appealed therefrom.
In addition to the foregoing procedural controversy, the plaintiff-appellant presents several questions of substantive law. The facts have been stipulated.
The first of these additional questions relates to assets from which the indebtedness of the estate may be deducted before imposition of the succession tax.
More specifically, may this estate’s indebtedness of $4,892.32 be deducted from so-called probate or administrable assets of $878.98 alone, or may the indebtedness be deducted from nonprobate or nonadministrable assets also if, as here, the former are insufficient to pay the indebtedness and the latter are adequate to meet the deficiency? Here the amount of the nonprobate assets is $18,175.40 — several times the amount of the estate indebtedness — but the estate itself is insolvent.
Counsel agree that the Ohio inheritance or succession tax imposed by Section 5731.02, Eevised Code, is an excise.
*376 They agree, too, that the tax is on the right to receive property rather than on the amount or value of property owned by the decedent.
Furthermore, they agree that nonprobate assets are legally not part of the estate of a decedent and hence are legally not liable for the indebtedness of the estate.
But counsel are in sharp disagreement as to the materiality and importance of the single fact that part of the nonadministrable or nonprobate assets was used by the legatee widow to pay the remaining indebtedness of the insolvent estate.
The plaintiff-appellant contends that, although the non-probate assets were not liable for the estate indebtedness, their use therefor renders them valueless to the widow as a part of the succession, and hence such part should not be subject to the tax as such.
It, of course, was an honorable gesture for the widow to voluntarily use a portion of the nonprobate assets to discharge the unpaid balance of the estate indebtedness in excess of the probate assets which were beyond the reach of the estate creditors. But does this commendable use of part of the non-probate assets render succession to that part nontaxable?
Unfortunately for the widow, the inheritance or succession tax in this state is imposed on the right to the succession. Section 7, Article XII of the Constitution of Ohio, reads in part as follows:
“Laws may be passed providing for the taxation of the right to receive, or to succeed to, estates * * #.” (Italics supplied.)
In conformity therewith, Section 5731.02, Revised Code, reads in part as follows:
“A tax is hereby levied upon the succession to any property passing, in trust or otherwise, for the use of a person * * *.” (Italics supplied.)
Manifestly the widow had the “right” to the succession for whatever “use” she chose to make of it.
As was stated in the opinion in the case of In re Estate of Daniel, 159 Ohio St., 109, 111 N. E. (2d), 252, “the succession tax is not a tax upon the estate, but is a tax upon the succession or the right and privilege to receive. It is not a tax on *377 property, but upon the right of succession to the property of a deceased person.”
It is obvious that the widow alone had the “right” to the succession and that she alone could “use” it as she chose. Under the law nothing further remained to be done to subject the succession to the tax. After this completion of the process, ■could the widow subsequently alter the status of the succession and lessen or abate the tax by the manner in which she happened to use her newly acquired.property? Neither the constitutional nor the statutory provisions intimate the existence of such a privilege, and this court is without the legislative authority to create it.
Counsel agree mat this precise question has not been determined previously by this court, and hence they cite several cases from other states. However, those decisions are of little assistance inasmuch as they are dependent on the particular provisions of the varying state laws. The matter is well summarized as follows in 110 A. L. R., 1255:
“Where the estate of a decedent is insolvent in that his debts exceed the value of property liable for their payment, so that the debts cannot be paid in full, but his gross estate for tax purposes includes property not liable for his debts, the question arises, under a statute allowing a deduction for the debts of a decedent in computing his net taxable estate, whether the total amount of the debts may be deducted, or the deduction must be limited to the value of the property liable for their payment, i. e., whether a deduction on account of the debts may be charged against property not liable for their payment as well as against property which is liable.
“This question, as the cases indicate, is entirely one of statutory construction, and the courts have frequently suggested that the legislative branch of the government may limit the right to deductions in this respect as it sees fit.”
A similar comment appears in 85 Corpus Juris Secundum, 1042, Section 1186.
The plaintiff’s next contention is that disallowance of estate debts as a deduction from nonprobate assets is a denial of equal'protection of the law as guaranteed by Section 1 of the Fourteenth Amendment to the federal Constitution. The *378 answer to this is that all recipients of nonprohate assets are treated alike, and they have the right to receive such assets without reduction for payment of estate debts.
The plaintiff’s final contention is that the tax should not be imposed with respect to the cash surrender value of certain “retirement annuity” contracts acquired by the decedent under his employer’s pension trust plan arranged with an insurance company for the benefit of employees. The plaintiff insists that the name of these contracts is not conclusive; that in reality they contain both life insurance provisions and annuity provisions ; that the widow was paid under the life insurance provisions; and that hence the right to receive the proceeds is not taxable. However, the contracts provide simply that if the employee dies before his sixty-fifth birthday “an amount equal to the premiums paid” shall lie payable to the beneficiary. The single fact that an insurance company is involved is not controlling. The important question is what was the widow entitled to receive. Since the decedent died before retirement, the widow received merely a return of the contributions — the cash surrender value of the unconsummated annuity contract. The essential element of a risk was not involved.
The lower courts were not in error.

Judgment affirmed.

Zimmerman, Stewart and Matthias, JJ., concur.
Taft, Bell and Herbert, JJ., dissent.